576 A.2d 283

IN THE MATTER OF JOHN J. MAHONEY, an ATTORNEY AT LAW.

Argued February 13, 1990—Decided July 20, 1990.

*David E. Johnson, Jr.,* Director, argued the cause on behalf of Office of Attorney Ethics.

*John J. Mahoney* argued the cause for respondent *pro se.*

PER CURIAM.

The District Ethics Committee (DEC) found respondent, John J. Mahoney, guilty by clear and convincing evidence of unethical conduct in his handling of the matters of four clients over a period of more than two years. Agreeing with the DEC's findings of unethical conduct, the Disciplinary Review Board (DRB) recommended that we impose a three-months suspension. The DRB further recommended a one-year proctorship of respondent on his return to the practice. We disagree with the recommendation and deliver instead this public reprimand.

As the DRB observed, the four matters that give rise to respondent's difficulties originated in real-estate transactions. The general theme is one of client neglect, contrary to *R.P.C.* 1.1(a) and 1.1(b). In handling a real-estate closing for his clients Dinsdale, respondent did not conclude the transaction for two years and failed to respond to numerous inquiries from the clients, contrary to *R.P.C.* 1.4. In that same transaction the local committee concluded, as did the DRB, that Mahoney had maintained his trust account in a "slipshod fashion," in violation of *R.P.C.* 1.15. In his handling of a quiet-title action for his clients Monks, respondent failed to pursue the matter for more than a year, during which he was "totally unreachable" by his clients, contrary to *R.P.C.* 1.4. In dealing with the affairs of his clients Matyiku, who were aggrieved by their prospective purchaser's failure to perform under a contract for the sale of residential property, respondent promised that he would begin shortly on the case, but neglected to take any action whatsoever. In addition, he did not keep the Matyikus properly informed nor did he timely return a retainer of $500 that they had given him. The DRB concluded that that "deceitful conduct" violated both *R.P.C.* 8.4(c) and *R.P.C.* 1.3.

It was a transaction involving Mahoney's client Sabelli that most troubled the DRB. Although respondent was under an obligation to procure the discharge of a mortgage on Sabelli's home, he failed to make timely efforts to obtain the discharge. That temporizing increased the difficulties with an excitable client. At one point respondent gave Sabelli a faulty discharge of the mortgage to file with the County Clerk, knowing that the discharge was irregular in form and therefore could not be recorded. Respondent acknowledged that he took that action "to shut [the client] up." When later confronted by the client, respondent lied to him by indicating that another discharge of mortgage had been sent to the Clerk for recording. A heated discussion between Sabelli and respondent followed, after which respondent, as found by the DRB, "essentially abandoned" his client—that is, he did no more work for Sabelli and did not respond to the client's inquiries.

Respondent contended below, as he did in oral argument before this Court, that Sabelli was a difficult client whose conduct rendered respondent fearful. The DEC and DRB found that excuse to be "wholly without merit."

In support of his position, Mahoney argued in this Court that after all of the difficulties arising from the inability to record a mortgage discharge, he had agreed to meet personally with Sabelli in an effort to calm him. In respondent's words, Sabelli had "met respondent in the parking lot [of a restaurant] and with alcohol-laden breath screamed at respondent 'make a move so I can leave you dead in the parking lot.'" Respondent says that he managed to escape the scene, but that having learned in the course of representing Sabelli that the latter had a pistol collection and had done time in prison for assault, he "simply withdrew for a number of months and lived in fear that every knock on the door of his home would be Sabelli seeking to even the score."

The DRB concluded that respondent's difficulties with Sabelli "were apparently of respondent's own making, inasmuch as he

not only failed to act for the client, but when the client pressed for results, as was his due, respondent gave him the bogus document to keep him quiet and thereafter misrepresented facts to him."

Our independent review of the record brings us to substantially the same conclusions as those reached by the DRB. There is no doubt of respondent's dereliction. We do not, however, find by clear and convincing evidence that respondent gave Sabelli a "bogus" document, unless one were to accept "improperly executed" as included in the meaning of "bogus." Except to the extent that the DRB report may be read to express a determination that respondent had prepared the document, the record fully supports the findings of the respective disciplinary bodies below.

The question becomes, then, one of the appropriate discipline. Respondent argues that at the time of his misconduct, he was laboring under severe pressures, largely because he had his office in his home and was therefore accessible to clients at any hour of the day or night. The occasions on which clients took advantage of that arrangement produced stress that respondent was ill-equipped to handle. That condition was exacerbated by the fact that respondent had informed his clients about the place of employment of his wife; thus, when the clients were unable to reach respondent, they called his wife and berated her. Mahoney has since remedied the difficulties arising from that arrangement by establishing his office in a municipality other than the one in which he resides.

The fact remains, however, that respondent's treatment of the Dinsdales, the Monks, and the Matyikus can in no way be justified by the pressures on which respondent relies. As the DRB correctly observed, "[t]ruthfulness and professionalism are paramount in an attorney's relationship with the client." It is abundantly clear from this record that respondent violated his obligation to his clients to pursue their interests diligently, a transgression that is compounded in the instance of the Maty-

ikus by a false promise, and in the instance of the Dinsdales by record-keeping violations. By his misconduct the respondent has brought himself perilously close to the result visited on respondent in *In re Kasdan*, 115 *N.J.* 472, 559 *A.*2d 411 (1989), in which this Court suspended for three months an attorney who had made numerous representations to a client, had prepared a false pleading to deceive her client, had failed to communicate with clients, and had issued a trust-account check against uncollected funds. Only because of substantial mitigating factors did we limit the suspension to three months. *Kasdan* differs, however, in the significant respect that Mahoney did not prepare any false documents.

Here, respondent has taken steps to get his practice in order. We are not unsympathetic to the considerable pressures under which he labored, recited above, although they surely do not serve to excuse his conduct entirely. In our view the appropriate discipline is a public reprimand, with the provision, however, that the respondent shall, in keeping with the DRB's recommendation, be subject to a one-year proctorship by an attorney selected by respondent and approved by the DRB. Respondent is to reimburse the Ethics Financial Committee for appropriate administrative costs.

So ordered.

*For reprimand*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that JOHN J. MAHONEY òf BERKELEY HEIGHTS, who was admitted to the Bar of this State in 1981, is hereby publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with the opinion of the

Court, this order and the full record of the matter, be added as a permanent part of the file of said JOHN J. MAHONEY as an attorney at law of the State of New Jersey; and it is further

ORDERED that JOHN J. MAHONEY reimburse the Ethics Financial Committee for appropriate administrative costs.